Filed 12/30/24  P. v. Thomas CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>RICKY THOMAS, JR.,<br><br>    Defendant and Respondent. | D083770<br><br><br><br>(Super. Ct. No. FVI22000877) |

APPEAL from a judgment of the Superior Court of San Bernardino County, Stephanie Tañada, Judge.  Reversed and remanded with directions.

Jason Anderson, District Attorney, and Mark A. Vos, Deputy District Attorney, for Plaintiff and Appellant.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Respondent.

The trial court dismissed with prejudice a criminal complaint against Ricky Thomas, Jr. involving two counts of assault with a semiautomatic firearm (Pen. Code, § 245, subd. (b)) under *California v. Trombetta* (1984) 467 U.S. 479 and *Arizona v. Youngblood* (1988) 488 U.S. 51.  The court found the government acted in bad faith by failing to include certain call records in

the crime report even though Thomas provided an incident number at the time of his arrest. That finding was based on the court's "understanding all of the records in this [incident] are gone" after a third party hacked the sheriff's system. Although a copy of the Computer-Aided Dispatch report for the incident number Thomas provided appears in the record, neither party corrected the court's understanding. As a result, we reverse and remand for further proceedings consistent with this opinion.

I.

A.

On April 5, 2022, Thomas allegedly pointed a gun at his ex-girlfriend, Nichole P., and her brother, Michael G., while they sat in a vehicle outside his home.

Thomas denied doing so. He told an officer he approached the vehicle with a gun in his sweatshirt because he did not recognize it and he did not expect Nichole to be there, but once he recognized her and her brother he moved the gun to his waistband. Thomas explained Nichole had visited a few days earlier to collect her belongings, after which another officer allegedly told her not to return.

In support of the prior incident, Thomas directed the officer to a "citation number," #VC220920171, and told the officer to look it up "to prove that [Nichole] was not supposed to even be here." The officer assured Thomas he would "definitely make sure . . . that we find that and that it gets included in the report."

The crime report summarizes the officer's interview with Thomas and notes: "Thomas did not expect [Nichole] to be at his residence due to #VC220920171 and Thomas was told [Nichole] should not pick up anymore belongings." It also attaches the related CAD report, a three-page document

titled "Detailed History for Police Inc# #VC220920171" for an event on April 2, 2022, when Nichole requested an officer "so she can get her belongings fr[o]m the home."  (Capitalization omitted.)

B.

Thomas later moved to dismiss the case, claiming violation of his due process rights because the San Bernardino County Sheriff's Department purportedly "lost, destroyed[,] and/or failed to protect exculpatory evidence."

Defense counsel explained he requested "the call history" for Thomas' address to prove, among other things, an officer told Nichole not to return a few days before April 5, but the District Attorney informed him the "call history" was "unavailable due to a data loss / data breach."  Defense counsel noted Thomas gave officers the incident number, #VC220920171, but claimed they "failed to include this information with their initial discovery packet."

At the hearing, neither party informed the court that a copy of the April 2 CAD report was attached to the crime report.  To the contrary, defense counsel argued the officer "was provided all the information that he needed" about the prior incident to view "the CAD log, the call history to obtain any police report that was written" but "purposefully did not secure it/did not attach it to this case."  The prosecutor, whose opposition brief noted the information related to #VC220920171 was purged during a ransomware hack, agreed the information was "lost" but disputed it was the result of bad faith.

The court granted Thomas' motion and dismissed the case with prejudice after finding the evidence for #VC220920171 was (1) potentially exculpatory and (2) lost in bad faith.

3

The April 2 CAD report was also included with the discovery packet attached to the People's denied motion to reconsider, although the People's brief makes no reference to it.

## II.

Federal due process requires the state to preserve only "'evidence that might be expected to play a significant role in the suspect's defense.'" (*People v. Montes* (2014) 58 Cal.4th 809, 837.) The standard for establishing a due process violation depends on the nature and materiality of the lost evidence. When, as here, lost evidence is only "potentially useful," the defendant must show the government destroyed it in bad faith. (*Youngblood*, 488 U.S. at p. 58.) "[A] trial court's inquiry whether evidence was destroyed in good faith or bad faith is essentially factual," which we review for substantial evidence. (*People v. Memro* (1995) 11 Cal.4th 786, 831.)

Here, the court's bad faith finding hinged on its understanding that the April 2 CAD report "was not included in the [crime] report" and "the report contains no mention of it." Based on that understanding, the court found "the officer made a conscious effort to suppress" information about the April 2 incident, "thereby acting in bad faith."

Neither party corrected, and instead perpetuated, what appears to be a fundamental factual misunderstanding, as a copy of the April 2 CAD report *was* attached to the crime report and to the People's motion for reconsideration. That misunderstanding continued on appeal, with the People's appellate briefing repeatedly referring to "the missing CAD report." Thomas' appellate brief mentions in the statement of facts that the crime report "includes the CAD log" yet fails to address that evidence in the argument section.

4

In response to our request for supplemental briefing on this point, the parties confirmed the document in question is a copy of the April 2 CAD report but disagree on next steps. The People propose we reverse and remand the case and order the trial court to deny Thomas' motion once it decides if "that document is the document it was led to believe was missing." Although Thomas concedes "nothing in the record establishes for certain whether the trial court was aware of the April 2, 2022[ ] CAD report," he claims remand is unnecessary because "it would not change the trial court's analysis." (Capitalization omitted.) We are not convinced.

The court expressly stated that, "[h]ad [the evidence for #VC220920171] been looked at and included in the report[,] we would have a much different issue." Although Thomas now argues the dismissal order was broader than the April 2 CAD report because he and the court "both expected a narrative report" describing the April 2 incident, we conclude the record is not so clear. Because bad faith is a factual question, we remand the matter for the court to determine in the first instance how the copy of the April 2 CAD report might affect its bad faith analysis, if at all.

III.

We reverse the order dismissing the case and remand the case for further proceedings consistent with this opinion.

CASTILLO, J.

WE CONCUR:

KELETY, Acting P. J.

RUBIN, J.

5